MARVIN, Judge.
With defendant Bradley’s appeal of his conviction by a jury of possession of marijuana with intent to distribute, which was found by police in his van, we have consolidated his writ application which alleges error relating to the forfeiture of the van.
The issues relate to the validity of Bradley’s detention and arrest on a tip from a confidential informant and the warrantless search of a suitcase in the van which contained six pounds of marijuana. We affirm in all respects.
*805 FACTS
Bradley had been the subject of other CDS investigations and was known to members of a Monroe narcotics task force as “dealing” drugs before the arrest here complained of. The vehicles which he drove and owned were familiar to task force members.
At about 8:00 a.m. on the day of Bradley’s arrest, a confidential informant told State Trooper Givens that Bradley was going to deliver several pounds of marijuana to the south side of Monroe. Givens alerted the task force for surveillance. About 9:30 a.m., Givens found Bradley’s blue van and intermittently observed Bradley’s activities. Givens testified:
“Q. Was there a point in time where you all ... where the police officers doing the surveillance came to a decision, let’s stop the van if we find it. In other words you were following it all around that morning, why didn’t you stop it that morning?
“A. Mr. Bradley did not appear to be picking up or delivering any drugs the time that we were surveilling (sic) him. He appeared to just go to the store and pick up something and come back or just go to a residence for a short period. If he did not take anything from the vehicle or bring anything to it we did not stop him because we didn’t have any reason to stop him. We would have blown the whole case then.”
About 11:30 a.m. deputy sheriff Clark, a task force member, telephoned the same Cl and learned that the Cl had seen about six pounds of marijuana in the van and that Bradley’s destination would be on Bruce Street in south Monroe. Bruce Street was staked out by Clark and Willis.
About 12:30 p.m. Bradley drove the van south on the Winnsboro Road by the stakeout and turned onto Bruce Street, a dead end street. Clark and Willis quickly followed the van and stopped it by driving in front of it. Bradley obeyed Clark’s instruction to get out of the van, but when the officers approached him on foot, he jumped back into the van and sped around the police car. After a chase almost to the end of the dead end street, Bradley was stopped and apprehended when he drove between two houses from where he could drive no further.
After some resistance, Bradley was then formally arrested for “resisting,” searched, handcuffed, and advised of his Miranda rights. LSA-Const. Art. 1, § 13. While other policemen were concerned with apprehending Bradley, officer Willis, who accompanied Clark, opened the door of the van to see if it contained other persons or the six pounds of marijuana the Cl had told about. No marijuana was visible, but Willis saw an open suitcase containing a large green and black garbage bag. As an experienced narcotics officer, Willis knew that persons dealing in marijuana often use such bags to transport marijuana in quantity. He unfolded the garbage bag and found the six pounds of marijuana packaged in smaller plastic baggies.
Bradley was again arrested, this time on the charge of which he was convicted, and was again read Miranda rights at the scene. He was booked in the parish jail, where, under custodial interrogation after further Miranda warnings, he made incul-patory statements to several officers. He would not allow his statements to be recorded or written, but freely admitted that he had the six pounds of marijuana on consignment from a source whom he refused to identify. He said he had obtained marijuana from this source at other times, as much as 40 pounds, and that he could obtain as much as 100 pounds, “up front,” meaning it was entrusted to him on consignment without his paying for it. He said he would get about $700 a pound for the marijuana and would then pay his source about $300 a pound, keeping the profit.
The van was immediately impounded by the police when Bradley was arrested and its contents were later inventoried. After Bradley’s conviction and on the day he was sentenced, April 4, 1983, the state filed its petition to have the van forfeited under LRS 32:1550-1552. After a hearing on *806 May 10, 1983, the trial court rendered and signed a judgment ordering the forfeiture.
THE Cl’S RELIABILITY
In arguing that his arrest was without probable cause, Bradley contends that the State did not prove that the CI was “reliable.” We disagree, Probable cause is established by looking to the totality of the circumstances. Illinois v. Gates, — U.S. —, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). This is also the test in ascertaining the credibility of a tip from a confidential informant. State v. Brooks, — So.2d — (La.1984). Two factors that are considered relevant in determining the reliability of the CI are prior accurate reports and specific independent corroboration of the instant information supplied by the CI. State v. Tesch, 431 So.2d 108 (La.App. 1st Cir.1983); State v. Paciera, 290 So.2d 681 (La.1974). Both of these factors are present here.
Deputy Clark had known this CI for several months before the defendant’s arrest occurred. He introduced the CI to Trooper Givens who met with the CI on at least ten occasions prior to the arrest. The CI had given Clark and Givens information concerning narcotics, some of which had been verified through other police intelligence sources. The CI had also participated in a surveillance drug buy in which Trooper Givens and Deputy Clark searched the CI prior to the buy to make sure he did not have money or drugs on his person, supplied him with money to make the buy and watched as he went into a building to purchase a bag of marijuana and saw him return with marijuana.
When Deputy Clark spoke to the CI at 11:30, within an hour of the arrest, the CI told Clark he had seen six pounds of marijuana in defendant’s van and that defendant would be taking the marijuana to Bruce Street. When Deputies Clark and Willis observed the defendant in his van turn onto Bruce Street and then flee from their first attempt to stop him, the information given by the CI was sufficiently corroborated in our opinion.
Defendant also argues that his motion to suppress should have been granted because the marijuana was seized pursuant to an unlawful, warrantless search of his vehicle. The automobile exception to the warrant requirement in Louisiana was discussed in State v. Hernandez, 408 So.2d 911 (La.1981).
“[TJhis court ... has not distinguished between -a vehicle stopped while in motion and then searched ... and a vehicle parked in a public place accessible to persons who might either move it or remove evidence from the vehicle.... For constitutional purposes, given probable cause, it was reasonable for the officers to immediately search the inherently mobile conveyance rather than merely to immobilize it and then secure a warrant before searching it. In Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), the Court rejected the contention that the warrantless immobilization or seizure of an automobile was a ‘lesser’ intrusion than the immediate search of the immobilized movable. The Court stated that ‘given probable cause, either course is reasonable.’ The Court has also recognized that the diminished expectations of privacy in the automobile ... justifies the determination that war-rantless searches of automobiles are reasonable when supported by probable cause, (citations omitted).” 408 So.2d at 914, 915.
The scope for valid warrantless searches of automobiles was more recently explained in United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). The Supreme Court said:
“We hold that the scope of the warrant-less search authorized by that exception is no broader and no narrower than a magistrate could legitimately authorize by warrant. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.” 102 S.Ct. at 2172.
*807 We find that the information obtained from the Cl was corroborated by the officers’ independent observations, their prior knowledge of the defendant, and the defendant’s flight. The totality of these circumstances constitute the requisite probable cause for stopping the defendant and searching his van for what they had been told it contained. The officers did not know whether the marijuana was in any specific container, but were justified in searching the entire vehicle, including the garbage bag in which the marijuana was found. Ross, supra.
The fact that several hours had passed from the time of the initial contact with the Cl does not change the result. Assuming that the police officers may not have had probable cause to search the vehicle until the Cl’s tip was corroborated by the officer’s independent observation of the defendant in the place where the Cl had said he would be, the exigency of the situation after that time left no time to obtain a warrant.
The defendant also argues that his right to privacy was violated by the Cl and that this violation is attributable to the state because the Cl had been working with the police. There are no facts in the record to show that an intrusion took place or whether the Cl obtained his information in the manner in which defendant concludes. This assignment is without merit.
FORFEITURE PROCEEDING
Defendant’s assignment of three errors relating to the forfeiture include the denial of his motion for a jury trial, the insufficiency of the evidence to prove probable cause, and the admission into evidence of inculpatory statements made by the defendant.
Before the forfeiture hearing began, the defendant filed a motion to quash, and alternatively, a motion for a jury trial. The motion to quash alleged prematurity on the grounds that defendant’s conviction was on appeal and was not final. The motion to quash was properly denied, was not argued and is not at issue in this appeal.
Denial of the alternative motion for jury trial is argued. The defendant contends that a forfeiture proceeding is quasi-criminal in nature and that he should be afforded the same rights as a defendant in a criminal prosecution. He claims that the denial of a trial by jury is a denial of due process under the Louisiana constitution.
The Louisiana Supreme Court has considered the forfeiture statute and the constitutional restraints that are imposed on forfeiture of property under the due process clause of our constitution. State v. Manuel, 426 So.2d 140 (La.1983) requires these four things:
(1) a proceeding be held prior to the forfeiture with notice and an opportunity to be heard,
(2) that the taking not be arbitrary or unreasonable,
(3) that there be proof beyond a reasonable doubt of the grounds for forfeiture, and
(4) that the seizure be made upon probable cause.
The forfeiture statute provides that property which has been seized “shall be forfeited in a hearing instituted by the district attorney.” LRS 32:1550(C). Neither the statute nor Manuel affords a defendant in a forfeiture proceeding the right to a trial by jury.
Even though a forfeiture proceeding is quasi-criminal in nature, under Manuel, supra, the Louisiana constitution allows the right to a jury trial in “a criminal case.” This term has been interpreted as referring only to cases where the defendant’s guilt or innocence is at issue. State v. Williams, 326 So.2d 815 (La.1976). Defendant’s guilt or innocence is not determined in a forfeiture proceeding. We find no error in denying defendant a trial by jury in the forfeiture proceeding.
The remaining two assignments question whether the state sustained its burden of proving that there was probable cause for the stop and search, whether the organic *808 substance seized from the van was marijuana, and whether the trial court erred in admitting defendant’s inculpatory statement.
LRS 32:1550(C) provides that the district attorney must show that (1) the seizure was constitutional or that the seizure was made upon reasonable grounds to believe it was constitutional, (2) the owner of the conveyance was knowingly and intentionally a consenting party or privy to a violation of the Controlled Dangerous Substances Law, and (3) the contraband was valued in excess of $500 or was intended for commercial sale. Manuel requires that these things be proven beyond a reasonable doubt.
Deputies Willis and Toney testified at the hearing. The state also introduced a copy of the defendant’s motion to suppress, the trial court ruling denying the motion to suppress, the trial court judgment finding defendant guilty and sentencing him, and a copy of defendant’s vehicle registration certificate for the van. Defendant did not present any evidence.
Deputy Willis testified that he was with Deputy Clark during the surveillance and subsequent arrest of the defendant. He said that approximately six pounds of vegetable matter, later determined to be marijuana, was seized and that the van was also seized and towed to the Ouachita Parish Correctional Center.
Deputy Toney testified that he was present during questioning of defendant on the day of the arrest. Defendant was advised of his Miranda rights and was further told that if he decided to make a statement he could stop at any time. To-ney testified that defendant did not appear intoxicated or drugged and that defendant indicated that he understood his rights. During the questioning, defendant refused to answer one question but answered all others. At this time defendant stated that he had six pounds of “dope” he had expected to sell for $700 per pound.
The trial court’s ruling denying the motion to suppress details the factual basis for the court’s finding of probable cause and exigent circumstances which uphold the constitutionality of the search and seizure of the marijuana and the seizure of defendant’s van. The trial court’s judgment shows that the defendant was convicted of possession of marijuana with intent to distribute in violation of LRS 40:966.
The evidence is sufficient to prove that the defendant owned the van, was knowingly a party to a violation of the CDS law, that the marijuana had a value of more than $500, and that the seizure was made with probable cause and was constitutionally in accord with Manuel, supra. We affirm the forfeiture and recall the writ. On the appeal, the defendant’s conviction is AFFIRMED.